The Chicago and Alton Railroad Company

*v.*

Catherine Dumser.

*Filed at Springfield March 30, 1896.*

1. Carriers—*a railroad ticket is not a contract.* Ordinarily a railroad ticket is not a contract, but merely a means adopted for convenience to enable persons in charge of trains to recognize the holder as entitled to passage.

2. Same—*liability of railroad company selling ticket beyond its own lines.* While the sale of a ticket over successive roads does not, of itself, import a contract to carry the passenger beyond the line of the company selling the ticket, yet such company may bind itself to be responsible for the entire journey.

3. Same—*evidence of the terms of the contract of carriage may be shown by parol.* It is admissible to prove by parol evidence, outside of the mere ticket sold, the terms of the contract in fact entered into between the carrier and the passenger.

4. Same—*liability on particular facts for injury beyond line of company selling ticket.* A railroad company is responsible for an injury to a passenger riding on its excursion train over a terminal line, on a through ticket sold him by such company, when such excursion was advertised, and scheduled by published time-table, to run to the final destination, without notice of the existence of any terminal line or that the company did not assume the entire responsibility, although an engine of the terminal company in fact hauled the train over such terminal line and an agent of the terminal company took up the terminal coupons.

5. Same—*diligence required of railroad company in furnishing cars.* There is no difference between the diligence required of a carrier in furnishing cars and conveyances for the safety of passengers and the care required for their safety in other respects.

6. Instructions—*as to liability of railroad company for injury on terminal line—when properly refused.* An instruction that a railroad company is not liable for injuries to a passenger upon an excursion train because the injury happened upon the track of a terminal association which managed the train from a junction to the terminal station, is properly refused, where the evidence tends to show that the company made itself liable for the whole route.

7. Same—*as to negligence of passenger riding on platform through tunnel.* An instruction, in an action for the death of a passenger, that he would be chargeable, under certain circumstances, with negligence in riding on the platform through a tunnel, is properly modified by

requiring that the jury believe that he knew, when he took the train, that it was so crowded that he could not get inside the car.

8. APPEALS AND ERRORS—*variance cannot be first urged on appeal.* A variance between the proof and declaration will not be considered on appeal, when not raised in the trial court.

*C. & A. R. R. Co.* v. *Dumser*, 60 Ill. App. 93, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon. CYRUS EPLER, Judge, presiding.

E. D. BLINN, for appellant:

A ticket sold by a railroad company to a passenger is a receipt for the money, and a contract between the passenger and the company over what lines of road he shall be carried. *Bennett* v. *Railroad Co.* 69 N. Y. 594; 25 Am. & Eng. Ency. of Law, 1074.

A company selling a ticket over its own road and a connecting line acts as agent only, and is not responsible for injuries received by the passenger occasioned by the negligence of the officers of the connecting line. 2 Redfield on Railways, 267; *Railroad Co.* v. *Connell*, 112 Ill. 295; 3 Wood on Railways, sec. 359; 2 id. sec. 1418; *Railroad Co.* v. *Sprayberry*, 9 Heisk. 852; *Knight* v. *Railroad Co.* 56 Me. 235; *Hartan* v. *Railroad Co.* 114 Mass. 44; 2 Hutchinson on Carriers, sec. 578; 25 Am. & Eng. Ency. of Law, sec. 4, p. 1085, and notes; Buch on Railways, sec. 1006; *Cringus* v. *Smith*, 29 Vt. 421.

A passenger voluntarily placing himself in a position of danger cannot recover where his act was the direct cause of the injury, nor can his widow and heirs recover in case of death from injuries so received. *Railroad Co.* v. *Green*, 81 Ill. 24; *Railroad Co.* v. *Becker*, 76 id. 31; *Railroad Co.* v. *Sweeney*, 52 id. 330; *Railroad Co.* v. *Bell*, 70 id. 103; *Abend* v. *Railroad Co.* 111 id. 209; 2 Redfield on Railways, 224.

The evidence for appellee failing to establish a liability against appellant, the court should have sustained

the motion to exclude the evidence and for an instruction to the jury to find for defendant. *Summers* v. *Railway Co.* 110 Ill. 340; *Phillips* v. *Dickerson*, 85 id. 11; *Martin* v. *Chambers*, 84 id. 579; *Reed* v. *Inhabitants of Deerfield*, 8 Allen, 524; *Railway Co.* v. *Jackson*, 3 Ill. App. 193; *Randall* v. *Railroad Co.* 109 U. S. 478; *Pleasants* v. *Fant*, 22 Wall. 120.

BEACH & HODNETT, for appellee:

Carriers are liable for injuries to passengers on roads over which their trains are run. *Railway Co.* v. *Peyton*, 106 Ill. 534; *Railroad Co.* v. *Martin*, 111 id. 219; *Railroad Co.* v. *Copeland*, 24 id. 332; *Quimby* v. *Vanderbilt*, 17 N. Y. 306; Ray on Negligence of Imposed Duties, 525, 526.

A common carrier must furnish room and accommodation on its cars to passengers. Hutchinson on Carriers, sec. 609; *Threadwell* v. *Whittier*, 80 Cal. 575.

It is not negligence to stand upon the platform of a crowded car. *Railroad Co.* v. *Fisher*, 38 Ill. App. 33, and 141 Ill. 614; Ray on Negligence of Imposed Duties, 410; *Willis* v. *Railroad Co.* 24 N. Y. 670; *Muldoon* v. *Railway Co.* 7 Wash. 528; *Nolan* v. *Railway Co.* 87 N. Y. 63.

A ticket sold by a railroad company to a passenger is usually held to be not a contract, but the evidence of a contract, or a mere receipt or voucher adopted for convenience to show that the passenger paid his fare from one place to another. *Burdick* v. *People*, 149 Ill. 600; *Logan* v. *Railroad Co.* 12 Am. & Eng. Ry. Cases, 141; Redfield on Railways, (6th ed.) 303; Ray on Negligence of Imposed Duties, 495; *Commonwealth* v. *Wilson*, 14 Phila. 384; 25 Am. & Eng. Ency. of Law, 1074.

The relation of passenger and carrier existing in this case, and the railroad company having knowledge of the demand for passage, the company was bound to exercise the utmost care and diligence, reasonably practicable, for the safety of the passenger. *Railroad Co.* v. *Pillsbury*, 123 Ill. 9; *Tuller* v. *Talbott*, 23 id. 357; *Railroad Co.* v. *Hazzard*,

26 id. 373; *Railroad Co.* v. *Arnol*, 144 id. 261; *Railroad Co.* v. *Byrum*, 48 Ill. App. 41.

Whether the deceased was guilty of contributory negligence was a question of fact for the jury.   *Railroad Co.* v. *Bonifield*, 104 Ill. 223; *Railroad Co.* v. *Haskins*, 115 id. 300; *Railroad Co.* v. *Trays*, 33 Ill. App. 307; *Railroad Co.* v. *Fisher*, 141 Ill. 614; *Nolan* v. *Railroad Co.* 63 N. Y. 63.

Where there is evidence which fairly tends to sustain the issues on plaintiff's behalf, it is error to take the case from the jury.   *Gartside Coal Co.* v. *Turk*, 147 Ill. 120; *Railway Co.* v. *O'Conner*, 115 id. 254; *Railway Co.* v. *Velie*, 36 Ill. App. 450; *Railway Co.* v. *Johnson*, 135 Ill. 647.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On Sunday, July 22, 1894, Charles F. Dumser went to St. Louis on an excursion train of appellant, from Broadwell, Illinois.   The train was run from Bloomington, Illinois, and was to return on the evening of the same day.   In the evening he got on the train at St. Louis to return, but could not get further than the platform on account of the crowded condition of the cars, and in passing through a tunnel he was probably overcome by the gases, smoke and vapor, and was thrown or fell off, and injured so that he died soon after.   Appellee brought this suit as his widow, by virtue of a statute of the State of Missouri giving her a right of action, and recovered $5000.   The judgment has been affirmed by the Appellate Court.

It was shown at the trial that defendant's railroad terminated at the junction in East St. Louis, and that the track from that junction across the bridge and through the tunnel to the depot in St. Louis was owned by the Terminal Railroad Association of St. Louis, composed of four different railroad corporations, and it is complained that the court refused instructions numbered 5 and 6, asked by defendant, to the effect that defendant

was not liable for any injury to the deceased while riding over the line of the terminal association.

The ticket purchased by the deceased was as follows: "Issued by Chicago & Alton R. R.—Special Excursion Ticket.—Good for one first-class passage to St. Louis and return, only on presentation of this ticket with coupon attached, subject to the following contract:" Here followed conditions, among which were these: "2d.—It is good for going and returning passage only on special train, Sunday, July 22, 1894." To this ticket were attached four coupons, each marked, "Issued by Chicago &. Alton R. R." On the margin of each was written, "St. Louis and return." Two were for use on the defendant's line and two for the Terminal Railroad Association, between St. Louis and East St. Louis. It is urged that this ticket was, in legal effect, a receipt for the fare from Broadwell to St. Louis, Mo., and return, and a contract between the deceased and defendant designating the lines of road over which he should ride, and that defendant was the agent of the terminal association, without responsibility for the negligence of the officers or servants of that association. It is true that the mere sale of a ticket over successive roads does not, ordinarily, import a contract with the seller to carry the passenger beyond the line of its own road, but that the seller of the ticket is the agent of the other road or roads. (*Pennsylvania Railroad Co.* v. *Connell*, 112 Ill. 295; 2 Redfield on Railways, 227.) But a company selling such a ticket may bind itself to be responsible for the entire route. Ordinarily a ticket is not a contract, but is a means adopted for convenience to enable the persons in charge of trains to recognize the holder as entitled to passage, and to be taken up by the conductor or ticket collector as his voucher. (*Burdick* v. *People*, 149 Ill. 600.) In American and English Encyclopedia of Law (vol. 25, p. 1074) the law on this subject is stated as follows: "The settled opinion is, that a passage ticket, in the ordinary

form, is merely a voucher, token or receipt, adopted for convenience, to show that the passenger has paid his fare from one place to another, and does not constitute the contract of carriage, although it often does have upon it some condition or limitation which enters into and forms a part of the contract. Accordingly, it is admissible to prove by parol evidence the terms of the contract in fact entered into between the carrier and the passenger."

In this case it was shown that the defendant advertised the excursion over its road by mammoth posters and by hand-bills and advertisements. The posters were as follows:

*SUNDAY, JULY 22 1894.*

# Grand Low Rate Excursion

BY SPECIAL TRAIN

## ᵀᴼ ST. LOUIS

AND RETURN, VIA THE

### *CHICAGO & ALTON R. R.*

Fare for the Round Trip, only $1.50.

---

Among the many attractions in St. Louis on Sunday, July 22, 1894, will be the great game of

### BASE BALL,

### ST. LOUIS vs. CHICAGO.

NATIONAL LEAGUE.

---

For particulars of special train service, see small bills. Ask your local Chicago & Alton ticket agent for tickets and further particulars.

JAMES CHARLTON,
General Passenger and Ticket Agent, Chicago, Ill.

The newspaper advertisements announced a grand, low-rate excursion to St. Louis by special train, *via* the Chicago and Alton railroad, calling attention to the low

fare and the great attractions in St. Louis on that Sunday, so that everybody could suit his or her taste in the wide diversity from the quiet, restful, beautiful parks and gardens, to horse races, theaters, and the great base ball game between the Chicago and St. Louis national league clubs. Other posters illustrated a game of base ball, in which it was stated that the Chicago and Alton Railroad Company would sell excursion tickets at $1.50 to St. Louis and return; and the hand-bills gave a time-table for going and returning, together with the Sunday attractions in St. Louis, such as base ball, beer gardens, band concerts and steamboat excursions. Neither in the time-table nor in any of these advertisements was there any information of the existence of a terminal association at St. Louis, or that the defendant did not assume the entire responsibility of the excursion from first to last. The only place where anything appears concerning that association is in the instructions given to defendant's agents and in the ticket delivered to the deceased. Neither the public nor the deceased had any notice of any limitations on defendant's responsibility, or that it would not be in charge of the excursion train until it reached St. Louis, or on the return from that place. By the time-table, St. Louis appeared as a station of defendant's railroad as much as any other station there advertised, and the ticket, when received, did not limit any liability created by the proposition of defendant to run the excursion train to St. Louis and return, which was accepted by the deceased by the purchase of his ticket. When the train reached the bridge junction at East St. Louis, defendant's engine was taken off and an engine of the terminal association pulled the train across the bridge to the depot in St. Louis. A ticket collector of the terminal association also came into the cars and took up the coupons for that association. This was the only change in the management of the train. The brakemen and porters remained in the cars, closed the win-

dows before going through the tunnel, and performed the same duties as before. In the depot at St. Louis the train was put on a track designated as defendant's track. The defendant's brakemen and porters assisted passengers upon the train and superintended the loading for the return. These employees were paid by the month by defendant. All that was done by the terminal association was to haul the train and collect the tickets while on that part of the road. And this is the regular method of transacting the business: the regular train crews of defendant go with the trains to and from the depot in St. Louis, and perform their usual services, with the exception of taking up the tickets. This evidence came very far from establishing that the terminal association was an independent, separate line of railroad. It is apparent that defendant, under some business arrangement, placed these trains under the control of this association of railroad corporations for the purpose of having them hauled over the bridge and through the tunnel to the depot.

The fifth instruction above referred to, which was refused, told the jury that the defendant was in no way responsible for an injury to a passenger riding over the trains of the terminal association, notwithstanding the posters read in evidence. The posters tended to show a contract, under which defendant would be so liable, and for that reason, as well as because the instruction was not applicable to the facts, it was properly refused.

The sixth instruction relieved the defendant from liability, notwithstanding its contract and the evidence as to the relation of defendant and the terminal association, on the ground, merely, that the terminal association owned the track and managed and ran the train from the depot in St. Louis to the bridge junction. As defendant could be, and the evidence tended to show that it was, made liable, as before stated, the instruction was wrong.

It is also complained that the court gave instructions as to the liability of defendant without limiting such

liability to its own line. We think that there was no evidence fairly tending to relieve defendant from responsibility for the negligence charged in the declaration, during the entire trip, and it was not necessary that any such instruction or limitation should be given or made.

It is also objected that the court modified instruction numbered 3, asked by defendant. This instruction, as asked, declared that the deceased, under certain circumstances, would be chargeable with negligence for riding on the platform of the car. The modification required, as the ground of such negligence, that the jury must believe that the deceased knew, when he came to take the train, that it was so crowded that he could not get inside the car. A question of negligence is ordinarily a question of fact, to be tried by the jury. An inference of negligence did not necessarily result from the statement of facts in the instruction, and it might have been properly refused. The instruction as given, with the modification, was fully as strong as the court would be authorized to state negligence as matter of law, and there was no error in the modification.

It is also complained that the court stated the degree of care required of defendant too strongly, and that there is a difference between the degree of diligence required in furnishing cars and conveyances for the safety of passengers, and the care required for their safety in other respects. We see no difference in that regard. The instructions would not make defendant liable if it was not reasonably possible or practicable to furnish cars in case of a crowd whose numbers exceeded all reasonable anticipation. The duty was not stated to be absolute or to involve any impossibilities, but the defendant was required to exercise the same degree of care, vigilance and forethought in that regard as in its other relations to its passengers. We see no error in so stating the rule.

It is insisted that there was a variance between the proof and the allegations of the declaration, but that

question was not raised in the trial court and will not be noticed here.

The judgment of the Appellate Court has settled the questions of fact, and, there being no error of law, the judgment will be affirmed.          *Judgment affirmed.*