288　　APPELLATE COURTS OF ILLINOIS.

Lust v. Metropolitan West Side Elevated Ry. Co., 222 Ill. App. 288.

## George F. Lust, Appellee, v. Metropolitan West Side Elevated Railway Company, Appellant.

### Gen. No. 26,536.

1. CARRIERS—*nature and effect of elevated ticket.* An elevated street railway passage ticket was merely a receipt to show payment of the fare, and did not constitute the contract of carriage, or the sole evidence of such contract, and the carrier was entitled, in an action by a passenger to recover the excess he was required to pay over the amount paid for the ticket, to show that the Public Utilities Commission had raised the rate of fare after the issuance of such ticket.

2. CARRIERS—*right to compel holder of elevated ticket to pay increased fare.* The purchaser of an elevated street railway ticket who presented such ticket in payment of his fare after the Public Utilities Commission had raised the rate of fare was properly required to pay the difference between the ticket and the amount fixed by such commission after the issuance of such ticket.

3. CARRIERS—*power of Public Utilities Commission to change rates.* The Public Utilities Act [Callaghan's 1916 Stat. ¶¶ 8686(1)-8686(101)] conferred upon the Public Utilities Commission the power of changing the rate to be charged by public utilities corporations, and the provisions of the State and federal constitutions forbidding the passing of laws by the State impairing the obligations of contracts did not apply where, after a street railway passage ticket had been sold, the commission raised the rate of fare.

4. CARRIERS—*contracts as subject to change of rates by State.* All public service contracts are made with an implied provision that the rate is subject to change according to law and subject to the power of the State through its lawfully created agencies to change the rate in the future.

Appeal from the Municipal Court of Chicago; the Hon. JOHN F. HAAS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Reversed. Opinion filed November 1, 1921.

ADDISON L. GARDNER and WILLIAM G. WOOD, for appellant.

GEORGE F. LUST, *pro se.*

MR. JUSTICE MORRILL delivered the opinion of the court.

Action was brought in the municipal court of Chicago by appellee, hereinafter called the plaintiff, against appellant, hereinafter called the defendant, to recover the sum of two cents which he claimed defendant had wrongfully collected from him, in addition to a ticket presented by him, in payment of a fare.

The statement of claim alleges that prior to March 4, 1920, the defendant, a corporation operating a system of elevated railway lines in Chicago, entered into a contract with plaintiff by which defendant agreed for a consideration of six cents to transport plaintiff or his assignees over its elevated railway lines within said city, which contract was evidenced by a ticket; that on March 4, 1920, plaintiff presented himself to be transported over defendant's lines and also presented said ticket to defendant's agent; that defendant refused to permit plaintiff to be carried over its lines without payment of an additional sum of two cents, which plaintiff was obliged to pay and paid under protest.

By its affidavit of merits defendant admits its corporate organization and the operation of its system of elevated railway lines; denies that it entered into any contract with plaintiff, as alleged in the statement of claim, and avers that prior to August 6, 1919, it sold tickets at six cents each, that amount being then the regularly established legal rate of fare charged by defendant for transportation within the city; that defendant recognized such ticket as the prepayment by the holder thereof of the sum of six cents, and accepted such tickets as entitling the holders to transportation so long as the regularly established and legal rate of fare charged therefor was six cents. It is also averred that on and after August 8, 1919, and on

March 4, 1920, the regularly established and legal rate of fare charged by defendant for transportation within said city was eight cents; that the rate of fare was established by an order of the Public Utilities Commission of Illinois, entered August 6, 1919, and amended by order entered January 28, 1920, and that said order provided that outstanding tickets before that time sold at six cents should be redeemed by the defendant at the purchase price or accepted as six cents in part payment of fare at the new rate. Defendant admits that if plaintiff presented such ticket as alleged, and defendant's agent refused to accept the same in full payment of the fare and refused to permit plaintiff to be transported over its line unless he paid an additional two cents, that its reason for such refusal was that the tender of such ticket was not on said date a tender of the then regularly established and legal fare over its lines and that acceptance of such ticket in full payment of such fare would have been in violation of law and of the said order of the Public Utilities Commission.

Upon the trial of the case plaintiff testified in his own behalf as to the purchase of the ticket for six cents, its presentation at the defendant's station in Chicago and his demand for passage over defendant's line. He states that he knew that on that date the fare was eight cents. The agent refused to accept the ticket in full payment of the fare and demanded two cents in addition, which was paid by plaintiff under protest. The words "good for one fare" were printed on one side of the ticket. On behalf of the defendant there was received in evidence a certified copy of the order of the Public Utilities Commission, entered August 6, 1919, which was after the plaintiff purchased the ticket above mentioned and seven months before he presented the same. Said order increased the rate of fare to be charged by the defendant from six to eight cents and was made effective on August 8, 1919. It

also provided that "outstanding tickets heretofore sold for six cents shall be redeemed at that price upon presentation or shall be accepted as six cents in part payment of the new fare." It was proved that the tariff had been filed with the Public Utilities Commission on August 7, 1919. The order of the commission entered January 28, 1920, providing that defendant should sell tickets at the rate of two for fifteen cents on and after February 1, 1920, was also received in evidence. Under this order the cash fare remained at eight cents.

The case was heard by a jury, which was instructed to return a verdict for plaintiff for two cents. The jury complied with the instructions of the court, and thereupon judgment was entered against defendant for two cents and costs after motions for a new trial and in arrest of judgment had been overruled.

It is urged by the appellant, in substance, that the verdict is contrary to the law and the evidence for the following reasons:

1. That the regulation of public utilities is within the police power of the State and is unabridged by the power of cities or villages under section 4 of article XI of the State Constitution.

2. That the Public Utilities Act was passed by this State in the exercise of its police power and is constitutional.

3. That the State may, in the exercise of its police power, disregard existing contracts between public utilities and consumers relating to service to be rendered or rates to be charged by public utilities without violating the constitutional rights of the parties.

4. That an implied contract with a public utility regarding rates and service to be rendered by it to a member of the public arose by operation of law from the sale of the ticket in question, but the ticket having been sold at the regular rate was not the contract.

5. That under the Public Utilities Act of Illinois

292 APPELLATE COURTS OF ILLINOIS.

Lust v. Metropolitan West Side Elevated Ry. Co., 222 Ill. App. 288.

the rate of fare the appellant is required by law to collect is the rate in effect at the time when the service is to be rendered, and that the furnishing of transportation for any other consideration than the rate of fare in effect when such transportation is furnished constitutes discrimination and is illegal.

6. The order increasing the rate of fare for transportation to a sum higher than that paid by appellee having been made prior to appellee's request for transportation, superseded the contract and excused performance thereof by appellant. The contract then became unenforceable at law. The verdict in this case awarding damages for the nonperformance of a nonenforceable contract is therefore against the law and should have been set aside by the trial court.

On the other hand, it is urged by appellee that a railroad ticket is a contract to carry, or the sole evidence of a contract to carry, over its road the person to whom the ticket is sold; that the Public Utilities Commission cannot enact any rule or order impairing the validity of existing contracts; and that if the carrier exacts a larger amount by way of fare than that to which the carrier is entitled, the passenger should recover back the excess charge with interest.

All of the propositions advanced by both parties to this appeal have been previously decided by federal and State reviewing courts of last resort. A brief recapitulation of these authorities will be furnished, but no attempt will be made to discuss them at length, as the questions involved appear to have been fully settled and a detailed discussion is unnecessary.

The nature of the contractual relations of the parties under the circumstances involved in the case at bar is one of the questions raised and discussed by counsel in their briefs. The law on this subject, as repeatedly recognized by the Supreme Court of this State, is well stated in 25 American Cyc. of Law, page 1074, as follows:

"The settled opinion is, that a passage ticket, in the ordinary form, is merely a voucher, token or receipt, adopted for convenience, to show that the passenger has paid his fare from one place to another, and does not constitute the contract of carriage, although it often does have upon it some condition or limitation which enters into and forms a part of the contract. Accordingly, it is admissible to prove by parol evidence the terms of the contract in fact entered into between the carrier and the passenger."
See also, *Chicago & A. R. Co. v. Dumser,* 161 Ill. 190; *Burdick v. People,* 149 Ill. 607; *Chicago & A. R. Co. v. Mulford,* 162 Ill. 531. The same conclusion has been reached by courts of last resort in many other jurisdictions, and the question must now be regarded as settled. Consequently, we cannot agree with appellee's contention that the ticket in question was a contract to carry or the sole evidence of a contract to carry the plaintiff over defendant's road. The cases above cited, on which both parties rely, hold expressly to the contrary.

It is admitted by appellee that the enactment of the Public Utilities Act was a proper exercise of the police power of the State, and no question is raised as to the constitutionality of the act. Therefore it is unnecessary for us to discuss these questions or to review the numerous authorities cited by appellant upon these topics. The Public Utilities Commission is an administrative agency of the State. *State Public Utilities Commission v. Chicago & W. T. R. Co.,* 275 Ill. 572. Appellee does contend, however, that the Public Utilities Commission had no power to enact any rule or order impairing the validity of an existing contract, meaning that its order of August 6, 1919, increasing fares from six to eight cents was void for that reason. In other words, the contention of appellee is that the Public Utilities Commission had no power to increase fares.

This question also has been fully settled by our Su-

preme Court and is not now open to debate. The substance of all these decisions is to the effect that the Public Utilities Act conferred upon the Public Utilities Commission the power of changing the rates to be charged by public utilities corporations. *State Public Utilities Commission v. City of Quincy*, 290 Ill. 360; *Chicago Rys. Co. v. City of Chicago*, 292 Ill. 190. It is clear that the provisions of the State and federal constitutions forbidding the passage of laws by the State impairing the obligations of contracts do not apply to the contract involved in the case at bar. *Hoyne v. Chicago & O. P. El. R. Co.*, 294 Ill. 413. All public service contracts of this character are made with an implied provision that the rate is subject to change according to law and subject to the power of the State through its lawfully created agencies to change the rate in the future. *Hite v. Cincinnati, I. & W. R. Co.*, 284 Ill. 297; *Chicago Rys. Co. v. City of Chicago*, 292 Ill. 190. Under various provisions of the Public Utilities Act, which it is unnecessary to quote, it is plain that the defendant could not avoid compliance with the order of August 6, 1919. The act expressly forbids it to charge or receive directly or indirectly any rate or fare other than that established by the commission. A failure to comply with these provisions would have exposed the appellant to a heavy penalty under the act.

In view of the foregoing, we are unable to agree with the conclusion of the trial court holding, in substance, that the order of the commission of August 6, 1919, impaired the obligation of the contract between the parties.

The judgment of the municipal court is therefore reversed.

*Reversed.*

GRIDLEY, P. J., and BARNES, J., concur.