THE CHICAGO AND SOUTHERN TRACTION COMPANY, Appellant, vs. THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.

*Opinion filed June 29, 1910—Petition stricken October 11, 1910.*

1. CONSTITUTIONAL LAW—*section 4 of article 11 does not give cities absolute control of streets.* Section 4 of article 11 of the constitution, providing that the General Assembly shall not pass any law giving a street railroad company the right to construct its road upon any street in a city without the consent of the city, does not give cities absolute control over their streets nor divest the State of its paramount control of streets and highways.

2. SAME—*Crossings act of 1889 is not in violation of section 4 of article 11 of the constitution.* The Crossings act of 1889, which delegates to the railroad and warehouse commission, as an agency of the State, the right to determine where and how one railroad may cross the main line of another railroad already constructed, does not violate section 4 of article 11 of the constitution.

3. SAME—*Crossings act of 1889 is not special legislation.* The Crossings act of 1889 is general in character and applies alike to all railroads in the State under similar circumstances and conditions, and is not unconstitutional as a special law upon the ground that it gives to a senior railroad a special and exclusive privilege, by enabling the railroad and warehouse commission to place the burden of constructing a crossing entirely upon the railroad desiring to cross the senior road,

4. SAME—*title of Crossings act and act itself do not embrace more than one subject.* The act of 1889, entitled "An act in relation to the crossing of one railway by another, and to prevent danger to life and property from grade crossings," deals with but one subject, which is expressed in the title, and is not invalid.

5. SAME—*the Crossings act of 1889 is a proper exercise of the power of the State.* The purpose of the act of 1889, relating to the crossing of one railroad by another, is to prevent danger to life and property from grade crossings, and is a proper exercise of the power of the State in that regard.

6. MUNICIPAL CORPORATIONS—*a. city's authority over streets is subject to paramount power of State.* While a municipal corporation is vested with the control of its streets within its corporate limits, such control is not exclusive but is subject to the paramount power of the State.

7. SAME—*section 1 of article 5 of Cities and Villages act does not give city power to control crossing of one railroad by another:* Section 1 of article 5 of the Cities and Villages act gives cities the power to control the location, grade and crossing of any railroad over their streets but does not give them the power to control the crossing of one railroad by another.

8. RAILROADS—*Crossings act of 1889 applies to streets within city limits.* The Crossings act of 1889 applies to the crossing of one commercial railroad by another in streets within the limits of any municipality, and while a city may refuse to allow a commercial railroad to be laid in its streets unless it is laid at grade the full length of the street, including the crossing of an existing railroad, or may grant the right only on condition that the railroad be laid at grade, yet it is for the railroad and warehouse commission to determine whether the crossing shall be at grade.

9. SAME—*section of commercial railroad within city limits is not a street railway.* The mere fact that a part of the connected line of a commercial railroad organized under the general Railroad law is within the limits of a city does not make the portion within such city a street railway.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

FRANCIS M. LOWES, (LEROY RICHARDS, of counsel,) for appellant:

The act in relation to the crossing of one railway by another and to prevent danger to life and property from grade crossings, in force July 1, 1889, is unconstitutional.

The constitution gives to cities and villages control of their streets in direct terms. Section 4 of article 11 provides: "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town or incorporated village without requiring the consent of the local authorities having the control of the street or highway proposed to be occupied by such street railroad."

A street cannot be under the management of two distinct governing powers. *Snell* v. *Chicago,* 133 Ill. 413.

That which is enjoined by fair implication from the constitutional provisions must be obeyed by the law-making department of the State, and any attempted substitution by the legislature of something as the equivalent of that which is enjoined is an assumption by it of power which rests in the people. *Hanna* v. *People,* 198 Ill. 77.

A city holds its streets in trust for the benefit of the public, and it cannot authorize their obstruction or vacation for the exclusive use and benefit of private individuals or corporations. It has also been held in this State ever since the early case of *Moses* v. *Railroad Co.* 21 Ill. 515, that laying railroad tracks in public streets, and operating cars thereon, is a legitimate use of such streets, and the power to grant it is vested in the municipality. *Weage* v. *Railroad Co.* 227 Ill. 421.

The title of the act embraces two subjects: (1) In relation to the crossing of one railway by another; (2) and to prevent danger to life and property from grade crossings. It is therefore void, as contravening section 13 of article 4 of the constitution of 1870. *Ritchie* v. *People,* 155 Ill. 98.

That part of the act of 1889 giving the railroad and warehouse commission the right to place the entire burden of a subway crossing upon the second five persons becoming an incorporated company contravenes section 22 of article 4 of the constitution and is void, in that it grants to the first

company a special and exclusive privilege, immunity and franchise. *Thomas* v. *Railroad Co.* 40 Fed. Rep. 132; *Allardt* v. *People,* 197 Ill. 501; *Millett* v. *People,* 117 id. 294; *Frye* v. *Partridge,* 82 id. 267; *People* v. *Cooper,* 83 id. 585.

Even though the act of July 1, 1889, is valid, it does not give the railroad and warehouse commission jurisdiction of railroad crossings on streets in an incorporated city. By the City and Village act of 1872 jurisdiction of crossings is given in direct, positive and special terms to the cities and villages. The Railroad and Warehouse act is not inconsistent with City and Village act. Both may stand together. *Railway Co,* v. *Railroad Co.* 149 Fed. Rep. 159.

A subway crossing is a local improvement, (*Railroad Co.* v. *East St. Louis,* 134 Ill. 656,) and as such local improvement it is exclusively within the jurisdiction of the city, and authority to order the same could not be conferred on the railroad and warehouse commission. Const. art. 9, sec. 9; *Updyke* v. *Wright,* 81 Ill. 49; *Dunham* v. *People,* 96 id. 331; *Snell* v. *Chicago,* 133 id. 413.

The legislature cannot divest cities of the governmental powers recognized in them by the letter or spirit of our constitution. Cooley's Const. Lim. (7th ed.) 334, 335.

JOHN G. DRENNAN, (W. S. KENYON, of counsel,) for appellee:

If the city authorities give a railroad their consent to lay tracks in a street at a place where it crosses the main line of another railroad, such consent is subject to the approval of the railroad and warehouse commission. The city has no control as to the place where and the manner in which the crossing shall be made. It may give its assent and prescribe conditions and limitations, but it cannot give the junior road authority beyond mere assent. Rev. Stat. chap. 114, sec. 20; Starr & Cur. Stat. chap. 114, sec. 112; *Malott* v. *Railway Co.* 108 Fed. Rep. 313; *In re Terminal Railway Co.* 122 N. Y. (App. Div.) 59 and 896.

The statute in question is not unconstitutional as embracing more than one subject or on account of delegating discretionary power to the commission. *People* v. *Brislin,* 80 Ill. 423; *Fleischman* v. *Walker,* 91 id. 318; *People* v. *Loewenthal,* 93 id. 191; *Railway Co.* v. *Lake View,* 105 id. 207; *Abington* v. *Cabeen,* 106 id. 200; *Virden* v. *Allan,* 107 id. 505; *Railroad Co.* v. *Commonwealth,* 55 S. E. Rep. 692; *State* v. *Railway Co.* 92 Pac. Rep. 606.

A State has authority not only to control railroad crossings within the corporate limits of cities and villages of the State, but may control the method of street crossings within the corporate limits of a city, town or village and compel cities to obey the orders. *Railroad Co.* v. *Bristol,* 151 U. S. 556; *In re Terminal Ry. Co.* 122 N. Y. (App. Div.) 59 and 896.

Mr. JUSTICE COOKE delivered the opinion of the court:

This was an application to the superior court of Cook county by the Chicago and Southern Traction Company (hereinafter referred to as the traction company) for a writ of injunction to restrain the Illinois Central Railroad Company (hereinafter referred to as the railroad company) from tearing up and removing the railroad tracks of the traction company which are laid in One Hundred and Fifty-seventh street, in the city of Harvey, at the point where said tracks cross the tracks of the railroad company. The cause was by stipulation of the parties heard by the court upon the bill, answer and documentary evidence, and thereafter a decree was entered by the court dismissing the bill for want of equity and adjudging the costs against the complainant. The traction company has prosecuted an appeal to this court.

The facts, so far as material to a proper consideration of the questions presented upon this appeal, are not in controversy. On and prior to September 6, 1905, the main tracks of the railroad company crossed One Hundred and

Fifty-seventh street, in the city of Harvey. Those tracks had been laid at that point on the right of way of the railroad company long prior to the opening of the street by the city. On the date last mentioned the city council of the city of Harvey passed an ordinance granting to the traction company, for a specified period, permission and authority to construct, maintain and operate a street railway, to be operated by means of electricity or other motive power equal or better, along and upon certain streets within the city of Harvey, including One Hundred and Fifty-seventh street from Center avenue to Halsted street, subject to certain conditions and provisions, among which were requirements that all tracks laid by the traction company should conform to the grade of the streets and should be laid under the direction and supervision of the board of local improvements of the city. The ordinance was approved by the mayor of the city and was accepted by the traction company on the day of its passage. Prior to the passage of this ordinance the traction company had been organized under the general Railroad act of this State, with power to purchase, construct, maintain and operate its railroad between the city of Chicago and the city of Kankakee, in the State of Illinois. After the adoption and acceptance of the ordinance the traction company entered upon the construction of its railroad within the city of Harvey along the route specified in the ordinance. In order to complete its line in One Hundred and Fifty-seventh street, in the city of Harvey, which was a part of its main line between Chicago and Kankakee, it became necessary to cross the main tracks and right of way of the railroad company above mentioned. Thereupon the traction company applied to the railroad and warehouse commission for an order prescribing the manner in which the traction company should construct its crossing in One Hundred and Fifty-seventh street over the tracks of the railroad company. On January 18, 1906, the commission rendered its decision, and en-

tered an order in conformity therewith, directing that the manner in which the traction company should cross the tracks and right of way of the railroad company should be by means of a subway to be constructed by the traction company and the whole cost of which should be borne by the traction company. The commission also found that the railroad company was willing to permit the traction company to cross its tracks by means of a grade crossing temporarily and until December 31, 1906, upon certain terms set forth in a contract between the two companies, and prescribed the manner in which such temporary grade crossing should be made, and ordered that if for any reason the traction company should not be able to complete the subway by December 31, 1906, it might apply for an extension of time, which would be granted by the commission for good cause. On March 7, 1907, the traction company, having theretofore constructed its grade crossing over the tracks of the railroad company at One Hundred and Fifty-seventh street under the contract with the railroad company but having failed to construct the subway, applied to the railroad and warehouse commission for an extension of time within which to comply with the order of January 18, 1906, which was granted, the time being extended to November 1, 1907. On July 9, 1908, the commission entered another order, reciting that it appeared that certain drainage ditches and other improvements were then in process of construction at the place where the subway was ordered and that it was impracticable at that time to construct the subway, and granting a further extension of time to July 1, 1909. On July 10, 1909, the traction company again applied to the commission for a further extension of time within which to comply with the order of January 18, 1906. This application was denied and an order was entered finding that a grade crossing impeded and endangered the business and travel upon both roads, and further finding that the drainage ditches and other improve-

ments in process of construction at the time of the entry of the order of July 9, 1908, were completed in the early fall of 1908, and had been effective in preventing the surface waters from overflowing the point where the crossing was ordered to be made, and that it was then, and had been for eight months, practicable to construct a subway in accordance with the former orders of the commission, but that the traction company had made no attempt to comply with the former orders and gave the commission no assurance that it intended in the near future to comply with the order of the commission in reference to the construction of the subway. After making these findings the commission revoked the permission given to the traction company by the order of January 18, 1906, to temporarily cross at grade the tracks of the railroad company at One Hundred and Fifty-seventh street, in the city of Harvey, and ordered the traction company to remove within thirty days, and thereafter cease to use, said grade crossing, or to thereafter cross the main tracks of the railroad company within the city of Harvey except by means of a subway constructed in the manner designated in the order of January 18, 1906. On August 17, 1909, the traction company filed its bill in this case for an injunction to restrain the railroad company from removing the tracks of the traction company at this crossing.

Appellant relies upon two grounds for a reversal of the decree: First, that the act of May 27, 1889, in relation to the crossing of one railway by another and to prevent danger to life and property from grade crossings, is unconstitutional; and second, that if the act is valid it does not give the railroad and warehouse commission jurisdiction of crossings on streets within an incorporated city.

A number of reasons are advanced in support of the contention that the act is unconstitutional. It is first urged that the constitution, by section 4 of article 11, gives to cities and villages exclusive control of their streets in di-

rect terms, and that any act which would in any way restrict an incorporated city in the control of its streets would be in direct conflict with that section of the constitution and void. We do not think the section of the constitution relied upon is susceptible of the construction given it by appellant. It does not give to cities and villages the exclusive control of their streets but merely provides that the General Assembly shall pass no law granting the right to construct and operate a street railroad within any city, town or incorporated village without requiring the consent of the local authorities having the control of the street or highway proposed to be occupied by such street railroad. This section does not, by implication, even attempt to divest the State of its paramount authority and control of the streets and highways. The authority vested in any incorporated city or village is there vested as an agency, only, the corporation itself being a mere creature of the State and existing only by authority of the legislature and at all times under its paramount supervision and control. "These municipal corporations are instrumentalities of the State, exercising such powers as are conferred upon them in the government of the municipality. Their power is measured by the legislative grant, and they can exercise such powers only as are expressly granted or are necessarily implied from the powers expressly conferred. The legislature, representing the great body of the people of the State, when no private right is invaded or trust violated, may repeal the law creating them, or exercise such control in respect of the streets, alleys and public grounds within the municipalities of the State as it shall deem for the interest of the people of the State." (*Smith* v. *McDowell,* 148 Ill. 51.) "Cities, towns, etc., possess and can exercise only such authority and control in regard to their streets as may be delegated by the legislature. They have no inherent power or authority in this respect and can act only in subordina-

tion to the paramount authority of the legislature." *City of Chicago* v. *Rumsey,* 87 Ill. 348.

While a municipal corporation is vested with the control of the streets within its corporate limits, such control is not exclusive but is subject to the superior control which may be exercised by the State at any time. It cannot be said, however, that the act of 1889 in any measure takes from municipal corporations the right to control their streets. It does not vest the control of any streets in the railroad and warehouse commission. Under its provision the railroad and warehouse commission is required, in proper cases, to designate the place where and the manner in which one railroad shall be allowed to cross the main line of another. If any city grants the right to a commercial railway to lay its tracks along one of its streets, as was done in this case, it does so subject to the right of the railroad and warehouse commission to direct the manner in which such railway shall construct its crossing over any other railway whose main tracks had been previously laid across such street. The city of Harvey had the authority to refuse to allow appellant to lay its tracks along One Hundred and Fifty-seventh street unless the same should be laid at the street grade the entire length of that street, including the point of crossing the main line of appellee. To that extent it has the right to control its streets and the manner in which appellant shall lay its tracks therein. The right of appellant to so lay its tracks across the main line of appellee in case any objection should be made to a crossing at grade depended entirely upon the action of the railroad and warehouse commission. Should the commission, upon investigation, find that the public safety required a separation of the grades of the two railroad companies, the city would be powerless to grant the right to appellant to cross the main line of appellee at grade. In making such finding the railroad and warehouse commission, acting as one of the agencies of the State, could not be said in any

sense to be exercising any control over the street but would be simply designating the manner in which the crossing must be made. If the city of Harvey would permit no other crossing except one at grade to be made at this point by appellant over the main line of appellee, then the only alternative open to appellant, upon a holding of the railroad and warehouse commission that a crossing at grade would not be permitted, would be to select some other point of crossing, whether it be upon some other street of the city of Harvey, with the consent of the municipality, or elsewhere.

It is next contended that the act of 1889 is unconstitutional for the reason that the title and the act itself each embraces more than one subject. The title of the act is, "An act in relation to the crossing of one railway by another, and to prevent danger to life and property from grade crossings." That the act itself deals with but one subject and that the title embraces but one subject seems to us so clear as not to call for discussion or elaboration.

It is also urged that the act is unconstitutional for the reason that it grants the senior road a special and exclusive privilege, immunity and franchise, in that it places the entire burden of constructing the crossing to be designated by the railroad and warehouse commission upon the junior road. We do not perceive wherein this act can be classed as special legislation in this respect. "If the law is general, and uniform in its operation upon all persons in like circumstances, it is general in a constitutional sense, but it must operate equally and uniformly upon all brought within the relation and circumstances for which it provides. On the other hand, if it is limited to a particular branch or designated portion of such persons it is special." (*Lippman* v. *People,* 175 Ill. 101.) A law general in its character may extend only to particular classes and not be obnoxious to the provisions of the constitution if all persons of the same class are treated alike under similar circum-

stances and conditions. (*Lippman* v. *People, supra.*)   The
act under consideration is general in its character although
it relates only to a particular class.   All railroad companies
under this act are treated alike under similar circumstances
and conditions, and the act cannot be said to be obnoxious
to section 22 of article 4 of the constitution.   We are of
the opinion that the act is not open to the criticisms made,
but is constitutional.

Appellant then contends that even though the act of
1889 is valid, it does not give the railroad and warehouse
commission jurisdiction over railroad crossings on streets
in an incorporated city, for the reason that the act to pro-
vide for the incorporation of cities and villages gives ju-
risdiction over crossings, in direct terms, to the cities and
villages.   This phase of the question has been treated, in
part, in the discussion of the constitutional questions raised.
That section of the act referred to, being section 1 of ar-
ticle 5, does not give cities and villages the power to regu-
late the crossing of one railroad by another, but simply
gives the power to control the location, grade and crossing
of any railroad over the streets of cities and villages.   The
act in question here contemplates that under the conditions
prescribed the railroad and warehouse commission shall
take jurisdiction of the crossing of one railroad by an-
other whenever and wherever it may be proposed to be
made, whether within or without the limits of an incorpo-
rated city, village or town.   There is nothing in our con-
stitution preventing the legislature from delegating this
power to the railroad and warehouse commission, and there
is nothing in this act which in any manner tends to confine
the operations of the railroad and warehouse commission
to territory outside the limits of municipal corporations.
No valid reason exists why any distinction should be made
in this regard.   The reason for giving the commission
authority to control the manner of constructing crossings
within municipal corporations is as well founded and po-

tent as that giving it authority to control similar crossings without the limits of municipal corporations. The purpose of the act is, as expressed in its title, to prevent danger to life and property from grade crossings, and is a proper power to be exercised by the State.

Appellant contends that for the purpose of this suit and for the purpose of being permitted to construct the crossing in question at grade it should be considered as a street railway only, and, relying upon the fact that the act of 1889 did not by express terms include street railways, insists that the railroad and warehouse commission has no jurisdiction and that it is not bound by any finding made by the commission. The question as to the status of appellant was before this court in *Bradley Manf. Co.* v. *Chicago and Southern Traction Co.* 229 Ill. 170, where it was specifically held that appellant was a commercial railway. The railway of appellant extends from the city of Chicago to the city of Kankakee. The mere fact that a portion of its main line is located on One Hundred and Fifty-seventh street, in the city of Harvey, does not operate to make that portion a street railway. That portion of the road located in Harvey is a part of the whole system, and is as much subject to the laws regulating commercial railways as any other part or section of the road. Being a commercial railway it comes within the express terms of this statute, and appellant must have so regarded the situation at the time the controversy over the construction of this crossing arose, as it was the party which applied to the railroad and warehouse commission to specify the manner in which the crossing should be constructed.

We find no reversible error in the record, and the decree of the superior court is affirmed.

*Decree affirmed.*