(No. 12703.—Decree affirmed.)

MACLAY HOYNE, State's Attorney, Appellant, *vs.* THE CHI-
CAGO AND OAK PARK ELEVATED RAILROAD COMPANY
*et al.* Appellees.

*Opinion filed October 23, 1920.*

1. RAILROADS—*city has no right to establish rates of fare by
contract with railroad company.* Neither by statute nor by any
provision of the constitution does a city have the right to establish
by an inviolable contract the rates of fare to be charged by rail-
road companies operating within the city, whether they are street
railway companies or railroad corporations organized under the
general Railroad act, but the power to regulate and fix such rates
belongs to the State as a part of its police power.

2. SAME—*what contract may be made by city when giving its
consent to use of streets.* Under section 4 of article 11 of the con-
stitution, prohibiting the legislature from granting the right to op-
erate a street railroad within any city without the consent of the
local authorities, the city may give its consent by any legal and
reasonable contract not infringing upon the rights of the State to
exercise its police powers in the interest of public safety, welfare,
comfort or convenience, and such contract will be binding on the
railway company and the municipality.

3. SAME—*elevated railroads are not street railways under sec-
tion 4 of article 11 of constitution.* Elevated railroads are organ-
ized under the general Railroad act and are not street railways
within the meaning of section 4 of article 11 of the constitution,
requiring the consent of the city to the construction and operation
of street railways.

4. SAME—*what obligations to city the legislature is prohibited
from extinguishing by section 23 of article 4 of constitution.* The
liability or obligation of a corporation or individual to a city which
the legislature is prohibited from extinguishing by section 23 of
article 4 of the constitution is such an obligation as the municipal-
ity has a legal right to contract for, not only as between the par-
ties to the agreement but also as against the right of the State
to interfere.

5. SAME—*interference of the State with municipal contract for
rates of fare does not violate provision of Federal constitution.* An
order of the Public Utilities Commission interfering with a con-
tract a city has with a railroad corporation relating to rates of fare
does not violate the provisions of the State or Federal constitution
against the passage of laws impairing the obligations of contracts.

6. PUBLIC UTILITIES—*equity has no jurisdiction to restrain collection of fares allowed by the Public Utilities Commission.* The Public Utilities act provides for an appeal in case a party is not satisfied with an order of the commission, and as the commission has jurisdiction to regulate the rates of fare of elevated railroad companies, neither the city nor anyone affected by an order for increase in fares can apply to a court of equity to enjoin the collection of fares on the ground that the order is invalid or erroneous.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

MACLAY HOYNE, State's Attorney, (HENRY A. BERGER, GLENN E. PLUMB, and DONALD R. RICHBERG, of counsel,) for appellant.

ISHAM, LINCOLN & BEALE, (GILBERT E. PORTER, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This case is aptly stated by appellees in their brief in the following language: "The Chicago and Oak Park· Elevated Railroad Company, the South Side Elevated Railroad Company, the Northwestern Elevated Railroad Company and the Metropolitan West Side Elevated Railway Company are corporations owning and operating elevated railroads. The railroad of the South Side Elevated Railroad Company is wholly within the city of Chicago, while the roads of the other three companies are partly within and partly without said city. The railroad of the Chicago and Oak Park Elevated Railroad Company is now in the custody of Samuel Insull as receiver, appointed by the United States district court for the northern district of Illinois. On December 3, 1918, the State's attorney for Cook county, acting in the name of the People of the State, filed in the circuit court of that county an information in chancery against the four companies and the receiver, asking for an injunction restraining them from charging on their

respective railroads more than five cents per passenger for a continuous trip between any two points within the city of Chicago, alleging that the order of the Public Utilities Commission prescribing a six-cent rate was unconstitutional, as an impairment of the city ordinances consenting to the constructing of the roads. The State's attorney moved for a preliminary injunction and the defendants moved for a stay order. On the hearing of the cause it was shown by affidavit that in the proceedings before the commission the city had appeared and filed a written answer and had introduced evidence and had made argument and that the city had perfected an appeal from the order of the commission to the circuit court of Sangamon county. Both motions were denied. Thereupon the State's attorney filed an amended information, setting forth that each of the companies was organized under the general railroad laws of this State; that their railroads were constructed within the city of Chicago under ordinances of the city providing that the rate of fare should not exceed five cents per passenger for any continuous trip within the city; that on November 19, 1918, the Public Utilities Commission, on application of the companies, entered an order prescribing a six-cent fare on such railroads wherever the five-cent fare was then being charged; that the companies, acting under the authority of that order, are now charging six cents per passenger for a single ride between points within the city; that the fare provisions of the ordinances constitute binding contracts between the city and the companies; that the order of the commission is unconstitutional and void because it impairs the obligations of such contracts, contrary to the provisions of section 14 of article 2 and section 23 of article 4 of the constitution of Illinois and section 10 of article 1 of the constitution of the United States, and that the order is invalid for the additional reason that it contains no definite finding that the six-cent rate is just and reasonable. There is also an allegation that the order

is void because it conflicts, in part, with the Maximum Rate law of 1907. The amended information also sets forth that the companies are carrying upwards of 560,000 passengers per day, and are consequently collecting unlawfully one cent per passenger, or upwards of $5600 per day, and that the passengers are suffering irreparable loss through the exaction of the unlawful rate. The prayer is that the defendants be temporarily and perpetually enjoined from charging and collecting more than five cents from any passenger for a continuous ride between any points within the city of Chicago. To this amended information the defendants filed a general and special demurrer. On March 3, 1919, the circuit court sustained the demurrer, and the State's attorney having elected to stand by the amended information, dismissed the suit. The present appeal is prosecuted by the State's attorney from the order of the circuit court."

The companies and the receiver contend that the order of the circuit court was right because (1) the State's attorney had no authority to maintain the suit; (2) his remedy, if any he has, is by *mandamus* and not by information in equity; (3) the amended information lacks indispensable parties,—the Public Utilities Commission and the city of Chicago; (4) the amended information makes no case for relief; and (5) the amended information is multifarious. All of these grounds are covered by the demurrer.

The contentions of the State's attorney, appellant, are embraced in two propositions: (1) The Public Utilities Commission has no power to abrogate, without the consent of the municipality, the maximum-fare provision in the contract ordinances granting the transportation companies the right to construct and operate railroads in the municipality; (2) the commission has not been delegated any power to fix temporary or emergency rates or any rates not specifically found by it to be just and reasonable.

There may be some question as to whether or not the record contains all the necessary parties to entitle appellant

to maintain this suit, but however that may be, we prefer to decide this case upon the two propositions contended for by appellant.

The Supreme Court of the United States, in *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 263, has stated it as the settled doctrine of that court that the State may authorize one of its municipal corporations to establish, by an inviolable contract, the rates to be charged by a public service corporation or natural person for a definite term not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. It is further stated, however, in that case, that for the very reason that such a contract has the effect of extinguishing *pro tanto* an undoubted power of government, both its exercise and the power to make it must clearly and unmistakably appear and all doubts must be resolved in favor of the continuance of the power. It is the settled doctrine of Illinois that neither the State nor our constitution has given cities and villages, or any other municipality in this State, the right or power to establish by such a contract the rates to be charged by railroad companies, whether street railways or railroads organized under the general Railroad act.

Section 4 of article 11 of the constitution of 1870 provides:. "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town or incorporated village, without requiring the consent of the local authorities having the control of the street or highway proposed to be occupied by such street railroad." It is contended by appellant that this provision of the constitution gives to the city of Chicago the right and power to make an inviolable contract with any street railway fixing the rates that shall be charged by such street railway for a reasonable time, and that it has made such a contract with appellees and that the power of the

294 - 27

State to fix or change the rates thus established does not exist. The right of the State to regulate or fix the rates for street railway companies is neither abridged nor denied by this section of the constitution. This provision simply requires the consent of the municipal officers to the construction and operation of a street railway and that no law shall be passed granting such right without such consent. While such consent, with or without terms, is essential to authorize such a railway to construct and operate its road, yet it is not a correct proposition to say that any and all contracts, legal and illegal, by which such consent may be given may be enforced. Certainly no good lawyer would contend that a contract between such a railway company and such officers giving such consent on condition that the railway company should pay each of such officers $1000 per annum during the life of the contract could be enforced. Any legal and reasonable contract not infringing upon the right of the State to exercise its police powers in the interest of public safety, welfare, comfort or convenience would be binding on such railway company and the municipality. The right and power to regulate and fix rates for a public utility belong to the State unless they are clearly surrendered and delegated to some other municipality, and such right and power are a part of its police power. The power of the State to fix rates for public utilities is of so much importance to the people of the whole State that this court ought not to declare such right and power surrendered and delegated without positive provisions of our laws or our constitution to that effect. Accordingly this court has repeatedly held that by said provision of the constitution the paramount authority and control of the State over streets and highways is not divested, and that it does not deprive the legislature of its power to fix rates for street railway companies. *Chicago and Southern Traction Co.* v. *Illinois Central Railroad Co.* 246 Ill. 146; *Public Utilities Com.* v. *Chicago and West Towns Railway Co.* 275 id. 555; *City*

*of Chicago* v. *O'Connell,* 278 id. 591; *Public Utilities Com.*
v. *City of Quincy,* 290 id. 360; *Chicago Railways Co.* v.
*City of Chicago,* 292 id. 190.

There is another significant reason why section 4 of ar-
ticle 11 of the constitution has no application to this case.
The provisions of said section of the constitution have ref-
erence only to street railway companies. The railroad
companies in this case, appellees, are not street railway
companies. They are elevated railroads organized under
the general Railroad act, and only a very small portion of
their roadways is in the streets of Chicago. The largest
portion of their rights of way is not situated in the streets
but across private property owned by private individuals,
and the rights of way across such private property were
either condemned or purchased for rights of way by the
railroad companies. The portions of such elevated rail-
roads as are located in the streets are sometimes spoken
of in decisions of this court as street railroads but with
the meaning that they are railroads *in streets.* They are
not street railways within the meaning of said section of
the constitution. *Knopf* v. *Lake Street Elevated Railroad
Co.* 197 Ill. 212; *Metropolitan Elevated Railway Co.* v.
*City of Chicago,* 261 id. 624.

Section 19 of the general Railroad act, according to
the contention of appellant, has the effect to deprive the
State of its right and power to regulate and fix rates for
railroad companies. That section provides: "Every cor-
poration formed under this act, shall, in addition to the pow-
ers hereinbefore conferred, have power: * * * Fifth,
to construct its railway across, along or upon any stream
of water, water-course, street, highway, plank road, turn-
pike or canal, which the route of such railway shall inter-
sect or touch: * * * *Provided,* * * * nothing in
this act contained shall be construed to authorize the * * *
construction of any railroad upon or across any street in

any city, or incorporated town or village, without the assent of the corporation of such city, town or village: *Provided,* that in case of the constructing of said railway along highways, plank roads, turnpikes or canals, such railway shall either first obtain the consent of the lawful authorities having control or jurisdiction of the same, or condemn the same under the provisions of. any eminent domain law now or hereafter in force in this State." ·For similar reasons given for our decision in this case in reference to section 4 of article 11 we also hold that this act does not, by implication or otherwise, attempt to deprive the State of its right and power to fix rates for railroad companies. Section 24 of the same act expressly gives the legislature power to prevent and correct abuses and to prevent unjust discriminations and extortions in the rates for freight and passenger fare, and to establish maximum rates of charges ·for the transportation of persons or property for any railway that may be constructed under the provisions of that act. Section 12 of article 11 of the constitution of· 1870 also provides that the General Assembly, from time to time, shall pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on the different railroads of this State. Section 15 of·the same·article also provides that the General Assembly shall pass laws to correct abuses and to prevent unjust discriminations and extortions in the rates of freight and passenger tariffs on the different railroads in this State. These latter provisions of the statute and of the constitution clearly reserve and give to the State the right and power to establish rates· and·charges to be made by railroad companies. *Metropolitan Elevated Railway Co.* v. *City of Chicago, supra.*

The result of our holding being that neither the·constitution of this State nor the legislature in any act has given to the city of Chicago or to any other city of this State the authority to make an inviolable contract with any street railway or any railroad company with reference to the rates

of fare which such companies shall charge passengers, it follows that the city of Chicago's contract with appellees with reference to fares to be charged by them is not binding on the State. As against the State's right to fix the rates of fare for appellees through the commission such contract has no binding force. (*Detroit* v. *Detroit Citizen's Railway Co.* 184 U. S. 368.) To hold otherwise would be, in effect, to oust the State of one of its sovereign prerogatives. Section 23 of article 4 of our constitution, providing that the General Assembly shall have no power to relieve or extinguish, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State or to any municipal corporation therein, is no bar to the legislature asserting its right to regulate and fix rates for railroad companies. Giving the words "liability and obligation," used in that section, their broadest· meaning, the provision would then not have the effect to make valid and binding, as against the State, the rates of fare established by the city of Chicago and appellees in their contracts. The liability or obligation spoken of in that section of the constitution only has reference to liabilities and obligations which the corporation and the municipality have the legal right and power to make, not only as between themselves but also as against the right of the State to interfere. We cannot interpret this provision of the constitution to give cities the right, by contract, to establish rates for railroad companies when the same constitution in other sections has vested this right solely in the legislature. For the same reason it is equally clear that the provisions of the State and Federal constitutions providing against the passage of laws by the State impairing the obligation of contracts are not applicable to the contracts in question. The contracts in question on the subject of rates create no liability or obligation which can be asserted as against the State in any court of this country. As against the State their provisions in that regard are illegal, as the right of

the legislature, when asserted, completely nullifies them as
to the subject of rates.

The purpose of this suit, as manifested by the briefs
and arguments of appellant and as disclosed by the infor-
mation, is to have the order of the Public Utilities Com-
mission increasing the rates of fare to be charged by the
appellees set aside as unlawful and void·because the com-
mission had no jurisdiction or power to consider or deal
with the question. Appellant based his claim for an injunc-
tion upon the proposition that the order of the commission
was absolutely void for want of power in or jurisdiction of
the commission to enter any order increasing the rates of
appellees. The information discloses that the Public Utili-
ties Commission, on application of appellees, heard evidence
upon the question of the sufficiency of the rates and that
the city had due notice and had appeared and contested the
application, and that after evidence heard the commission
entered the order in question. Section 41 of the Public
Utilities act gives the commission complete power and au-
thority to grant such a hearing and to determine the just,
reasonable or sufficient rate or other charge that ought to
be made under the law and to enter an order fixing the
same. Section 68 of the same act gives any person or cor-
poration affected by such order or decision an appeal to the
circuit court of Sangamon county for the purpose of hav-
ing the reasonableness or lawfulness of the order or deci-
sion inquired into and determined. Appeals from all final
orders and judgments of the circuit court may also be
taken directly to this court by either party to the action.
The commission being invested with full authority and
power to thus grant a hearing and to enter its order upon
its findings, and all rights being saved by appeal to any
party affected by its decision, appellant has failed to make
good his contention that the order of the commission was
void for the reasons aforesaid and therefore subject to at-

tack by this collateral proceeding as a void order. The court therefore properly sustained the demurrer to the information. The city, or anyone affected by the order in question, had a complete remedy at law by appealing from the order in the mode pointed out by statute. The city, as already disclosed, has already taken advantage of this remedy by appeal.

The contention of appellant that the commission had no authority to fix an emergency rate has been expressly overruled in the case of *Chicago Railways Co.* v. *City of Chicago, supra.*

There are still other objections raised, in substance, that the order entered by the commission permits a charge in excess of two cents per mile between certain stations on appellees' roads and allows a minimum charge exceeding five cents, in violation of the act of the General Assembly of May 27, 1907, fixing a maximum charge of two cents per mile, etc., and that there is no finding in the order that the rate fixed is a reasonable rate for appellees to charge. These objections merely amount to the charge that the order is informal or erroneous in certain particulars because it does not follow or comply with the law, and all of them, if fatal objections, may be remedied by appeal, or they might have been modified at any time by the commission upon notice to the public utility affected in accordance with the provisions of section 67 of the Public Utilities act. It therefore appears clear that appellant had a complete remedy at law, and as this was disclosed by the positive allegations of his information the court properly sustained the demurrer to the bill for want of equity.

The decree of the circuit court is affirmed.

*Decree affirmed.*