## J. W. Parker, Appellee, v. Village of Bradley, Appellant.

### Gen. No. 8,425.

Opinion filed February 18, 1932.
Rehearing denied May 4, 1932.

H. S. STREETER, JOHN H. BECKERS and E. A. MAR-COTTE, for appellant.

FRANK J. BURNS and JAMES T. BURNS, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.
This is an action in case for the recovery of conse-quential damages from the defendant by reason of the lowering of Broadway, one of defendant's streets, for

the purpose of constructing a subway under certain railroad tracks to be used in connection with State Route 44 through the Village of Bradley, Illinois.

The plaintiff filed a declaration and an amended declaration, to each of which the court sustained general demurrers. The plaintiff then filed his second amended declaration and by agreement of parties, he was allowed to amend that pleading and it was ordered by the court that the general and special demurrer filed by the defendant stand as a demurrer to said second amended declaration.

The declaration is very lengthy, but stripped of all superfluous verbiage, the first count alleges in substance, "That at the time of lowering Broadway and now plaintiff is the owner of Lot 26 in Block 39 in the Village of Bradley, which was improved with a two-story building, the lower floor of which was used as a repair and machine-shop, and the upper floor was used for residence purposes; that said property abuts on Broadway, a street in the Village of Bradley, and that the State of Illinois, through its Department of Public Works and Buildings has constructed State Route 44 over said Broadway; that said Route crosses the Illinois Central and New York Central Railroads through a subway under the tracks, and that immediately west of the Illinois Central Railroad is a street called West Avenue, and one block west of West Avenue, there is another street called Washington Avenue, both of which streets run in northerly and southerly directions and cross Broadway; that in order to construct Route 44 and eliminate a grade crossing, the Department by its Division of Highways filed an application with the Illinois Commerce Commission, to which the Village of Bradley was made a party, and certain hearings were had before that Commission at which the defendant voluntarily appeared, and that said Commission entered orders in and by which it apportioned the cost of

constructing such crossings by means of a subway, and that said order apportioning the cost of said subway, provided that the Village of Bradley at its own expense shall secure or cause to be secured and shall dedicate for street purposes the necessary right of way through the private properties for the extension of Broadway in an easterly direction to Schuyler Avenue, and make certification to the railroads thereof, and in addition thereto, shall assume any and all consequential damages to abutting properties on account of lowering Broadway, and permit drainage connections for the subway with the public sewers of the Village, and that the Village undertook and did carry out such orders in part.''

The count then sets out in *''haec verba''* the order of the commerce commission. The count further avers ''the making of plans for the work, and that in building the subway, the roadway of Broadway in front of plaintiff's property was lowered so that the grade in the subway is 12 feet below the natural surface of Broadway before the subway was built.''

The count then avers, ''That plaintiff filed a claim for said damages with the Court of Claims of the State of Illinois,'' but that the court dismissed the claim and held that the Village of Bradley was liable for said damages, and that said judgment is in full force and effect and is set out in *''haec verba''* in said count. The count then concludes ''that by reason thereof, plaintiff says he is injured and his property has been depreciated and he has suffered damages to the extent of $5,000.00 and that under the Constitution and Laws of the State of Illinois, he is entitled to recover.''

The second count is practically the same as the first count and in addition to the allegations of the first count, states ''that the subway does not cover the entire width of Broadway and that it is surrounded by retaining walls on either side thereof, extending above the grade of the hard road and also extending to-wit, 5 feet

above the natural surface of the old grade, and that by reason thereof, West Avenue and an alley in the middle of Block 39 have been closed so that it was necessary for traffic to detour by way of Washington Avenue in order to cross Broadway."

The third count alleges "that plaintiff is the owner of the premises; that during the years 1926 and 1927 the State constructed State Aid Hard Road 44 over Broadway in the Village of Bradley," that said road crosses the Illinois Central and New York Central track in a subway; that the plans of said subway had the approval of the Village of Bradley; that in order to gain authority to construct said subway and approaches the Department of Public Works and Buildings, Division of Highways of the State of Illinois, filed its application with the Illinois commerce commission and made the defendant a party thereto. It then sets out the order of the commission in full, which order so far as it affects the Village of Bradley, provides that the village pay for all needed rights of way for the relocation of the highway crossing and pay any and all consequential damages to abutting property and permit sewer connection with its public sewers. It further alleges that said order is in full force and effect; that said subway was constructed under said order; the grade in front of plaintiff's premises was depressed, that the Village of Bradley undertook to carry out the orders of said commission and did carry them out, except as hereinafter complained of. The plaintiff further avers that said subway was constructed in such a careless, negligent and unlawful manner that blasting and dynamite charges in the course of said construction greatly damaged the windows, doors and other parts of the house of said plaintiff located on said premises, and that stones, wood and debris were thrown high into the air by said blasting and dynamite and were hurled upon the roof thereof and other parts, causing great damage thereto, to wit, damages to the

extent of $5,000, and that the Village of Bradley refuses to pay said damages.

To this declaration, the defendant filed a general and special demurrer, stating 12 causes of demurrer, but owing to the last amendment to the declaration the defendant now relies on his fourth, fifth, sixth, seventh and eighth causes for demurrer, and the special demurrer to the third count of the declaration. The court overruled the demurrer and the defendant elected to abide by its demurrer. A jury was impaneled to assess plaintiff's damages. Evidence was heard and the jury brought in two verdicts. One assessing the plaintiff's damages at $400, as a result of lowering the grade of Broadway and by the construction of the subway in question and the closing of West avenue and the alley between West avenue and Washington avenue crossing Broadway. The second verdict assessed the plaintiff's damage to the house caused by blasting during the construction of the subway, causing rocks and other debris being thrown against the house, at $250.

To review the findings of the jury and to test the sufficiency of the declaration, the Village of Bradley brings the case to this court on appeal.

The second cause for demurrer "questions the validity of the order of the commerce commission."

The fourth cause assigned questions the power of the Illinois commerce commission to require the defendant to obtain the land by way of condemnation and by requiring them to pay the damages to the property, etc.

Causes five and six, "the demurrer raises the question of the sufficiency of the declaration because even if the orders were valid, the declaration does not allege that the commerce commission certified its findings to the defendant as required by Sec. 58 of the Utilities Act."

Cause seven, "questions the sufficiency of the order set forth in the declaration as to the ascertainment and

apportionment of the cost between the defendant and utilities involved.''

Cause eight sets forth ''that the damages in each count of the plaintiff's declaration are general damages suffered by the entire public.''

The special demurrer to the third count sets forth ''that the count is double in that it joins in one count a claim for consequential damages on real property based on an alleged agreement by said village incorporated in the order of the commerce commission; also a further claim for actual damages caused by the negligence of the person or persons constructing said highway.''

It is earnestly insisted by the appellant that the order of the commerce commission apportioning the cost of building the viaduct in question and ordering the Village of Bradley to pay the consequential damages to property which had been damaged by reason of the construction of said viaduct is invalid and not binding upon appellant. The declaration charges that, in the proceedings before the commerce commission to have the costs apportioned to build this viaduct, the Village of Bradley was made a party to said proceeding, and that the commerce commission ordered the Village to assume, among other things, consequential damages to the property taken in construction of the subway. It also alleges that the Village of Bradley accepted the benefit derived from said order, but refused to pay the plaintiff his consequential damages by reason of the construction of the subway. The defendant by filing a demurrer to the declaration admits these charges to be true, and in our opinion, the declaration states a good cause of action.

After having been made a party to the proceeding and participating in the hearings, the Village of Bradley cannot now be heard to say that they are not bound by the order of the Illinois commerce commission. This question was decided by our Supreme Court adversely

to the contentions of the appellant in the case of *Chicago, N. S. and M. R. Co. v. City of Chicago,* reported in 331 Ill. 360. In this case the City of Chicago was made a party to the hearing before the Illinois commerce commission and appearing by their city attorney and other counsel. A dispute arose between the city and the railroad company relative to the right of the railroad for the use of their tracks in the City of Chicago. The City of Chicago contended that their city attorney had no right to bind the City of Chicago by any agreement or otherwise before the commerce commission.

In passing upon this question, the court, on page 374 in this opinion says: "Appellees contend that the city is not bound by such representation, as its counsel had no authority to bind the city council in such manner. Whether the city is bound by the consent of its counsel to the order of the commission is of no consequence here. It is admitted that it had notice and appeared at the hearing. Under section 67 of the Public Utilities Act the city had a right to a review of the decision of the commission by appeal to the courts. Its remedy was complete had it seen fit to follow it. (*Hoyne v. Chicago and Oak Park Elevated Railroad Co.,* 294 Ill. 413.) It took no appeal and sought no review of the order of the commission, and therefore that order became final and binding on the city. Section 68 of the Public Utilities Act provides that when no appeal is taken from the order or decision of the commission as provided in the act, the parties affected by such order are deemed to have waived the right to have the merits of the controversy reviewed by a court. Section 68, above referred to, also provides that where the right of appeal is waived there shall be no trial of the merits of any controversy in which such order or decision was made, by any court to which application shall be made for a writ to enforce the same, or in any other judicial

proceeding. The cross-bill of the city in this case is a collateral attack on the order of the commission. (*Hoyne v. Chicago and Oak Park Elevated Railroad Co., supra.*)''

It is our opinion that after the city was made a party to and taking part in the hearing before the commerce commission, and not taking an appeal from such decision as the statute provides, it cannot now be heard to say that it is not bound by this decision. In attempting at this time to question the validity of the order of the commerce commission would be a collateral attack and cannot be done in a proceeding of this kind.

The fifth and sixth causes for demurrer, ''that the Commission did not certify its finding to the defendant as required by section 58 of the Utilities Act'' we think are without merit. The declaration alleges that the village was made a party to the proceedings and that it accepted the part of the order that was beneficial to the city, but refused to pay the consequential damages. It had full knowledge of what this order was, and is bound thereby. This also is a collateral attack on the order of the commerce commission, and under the law cannot be done.

The appellants assign as error that the court gave to the jury appellee's instruction No. 3, namely: ''You are instructed that while it is the law that the fair cash market value of the property may be determined with reference to the best and most profitable use which could have been made of it before the construction of the subway and afterwards, the law contemplates that such use shall be for *legal purposes or business.*'' The appellants in support of their contention rely on *Freiberg v. South Side Elevated R. Co.*, 221 Ill. 508. On examination of that case it is disclosed that at the time of the hearing of the case, the State law and the city ordinances made it legal to license saloon and dance halls. The evidence showed that the property in

question in this case was what is commonly called a disreputable saloon and dance hall. The question arose about the value of the property that had been taken in an eminent domain proceeding, and the court in their opinion say: "Neither a saloon or a dance hall is illegal *per se.*" In 1924, the Illinois Prohibition Act was in full force and effect. The appellant's contention that they should have been allowed to show that this property would be more valuable for a soft-drink parlor which would violate the Prohibition Act, seems to us without any merit. Such business now is *illegal per se.* It was certainly the duty of the City of Bradley, and especially the city attorney, who appears of record in this case representing the city, to see that such a condition did not exist in the Village of Bradley. The appellant in its motion for a directed verdict admits that under the pleadings at the hearing of the evidence of damages, that the village is liable for nominal damage. In our opinion, the court did not err in giving the third instruction for the plaintiff as it would affect only the amount of damages. If it was error the appellant is in no position to raise this question for the reason we find no assignment of error in the abstract claiming that the amount of damages is excessive.

For the reasons we have stated relative to the validity of the order of the Illinois commerce commission and that the same is a valid and binding order on the defendant, the court did not err in refusing to give appellant's instructions Nos. 12 and 13.

Complaint is made because the jury brought in two separate verdicts in this case. This was an irregularity but we cannot see how the appellant has been damaged in any way by the jury's form of verdicts. Each verdict shows distinctly what, in the jury's opinion, the damages were that had been sustained by the appellee. Under the evidence the jury was justified in bringing in a verdict for the amount they did. In the case of

*Roberts v. Gates,* 64 Ill. 374, the facts are not similar to this case. In the *Roberts* case the plaintiffs were suing in different capacities, one an individual and another as a partnership. Here the plaintiff's right that she is seeking to enforce against the appellant is the amount of damage she has sustained to her property.

We think, under the circumstances, it is not reversible error to have the verdicts in the form they are. We find no reversible error in the case and the judgment of the circuit court of Kankakee county is hereby affirmed.

*Judgment affirmed.*